UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE:

DOCKET NUMBER: 2295
PORTFOLIO RECOVERY ASSOCIATES, LLC, TELEPHONE CONSUMER
PROTECTION ACT LITIGATION
THURSDAY, DECEMBER 1, 2011
TOMOCHICHI UNITED STATES COURTHOUSE
SAVANNAH, GEORGIA

_____

**PANEL MEMBERS**

**JOHN G. HEYBURN, II, Chairman**

| | |
|---|---|
| **KATHRYN H. VRATIL** | **W. ROYAL FURGESON, JR.** |
| **BARBARA S. JONES** | **PAUL J. BARBADORO** |
| **MARJORIE O. RENDELL** | **CHARLES R. BREYER** |

_____

**TRANSCRIPT OF HEARING**

ATTORNEY APPEARANCES:
    JAMES O. LATTURNER (For Jeremy Frydman, et al)
    Edelman, Combs, Latturner & Goodwin, LLC
    Chicago, Illinois

    CHRISTOPHER W. MADEL (For Portfolio Recovery Associates)
    Robins, Kaplan, Miller & Ciresi, LLP
    Minneapolis, Minnesota

    HENRY A. TURNER (For Kimberly Bartlett and Karen Harvey)
    Turner Law Offices, LLC
    Decatur, Georgia

REPORTED BY:
    C. Joan Mobley
    U.S. District Court Reporter, CCR-B1678, CVR
    P.O. Box 1316
    Brunswick, Georgia  31521
    (912) 280-1348

## INDEX

**Argument**

1. James O. Latturner      3
2. Christopher W. Madel    5
3. Henry A. Turner         10

```
 1                      P R O C E E D I N G S

 2                     (Call to Order at 10:40 a.m.)

 3            JUDGE HEYBURN:  Next is 2295, the Portfolio Recovery

 4   Associates, Telephone Consumer Protection Act Litigation.  We

 5   have three arguments.

 6            Mr. Latturner, is that how you pronounce it?

 7            MR. LATTURNER:  Latturner, yes.

 8            JUDGE HEYBURN:  Welcome.

 9            MR. LATTURNER:  I represent the Plaintiffs in the

10   Frydman, Allen, and Meyer cases.

11            With regard to the question of consolidation, there is

12   very recent precedent for it.  I was before this Panel in

13   September on the Midland TCPA case which involves the same

14   alleged violation and the same issues and this Court

15   consolidated that and I think there should be a consolidation

16   here.

17            With regard to the issue of where it should be

18   consolidated, we have agreed that it should go to the Southern

19   District of California.  It is much further progressed than

20   certainly the Illinois case.  It was also the first filed case

21   which I know this Panel does consider.  The Bartlett and Harvey

22   cases are being asked to be excluded from any consolidation.  We

23   have no objection to that nor do we have any objection to them

24   being included.  That is an issue that the two subsequent

25   counsel are going to discuss I think at length.
```

1    So if there are no further questions I believe --

2    JUDGE FURGESON:  I want to make clear.  You originally
3 sought centralization in Illinois.

4    MR. LATTURNER:  That is correct.

5    JUDGE FURGESON:  And now you have taken the position
6 that the Southern District of California would work?

7    MR. LATTURNER:  Southern District of California will
8 work.

9    JUDGE FURGESON:  And is that your preference or do you
10 just state either one --

11   MR. LATTURNER:  I would certainly prefer it to go to
12 Illinois but I think all things considered particularly after
13 the sequence in the *Midland* case California is further along
14 than the Illinois case and it is certainly a reasonable --
15 anytime you want to send it to the Northern District of Illinois
16 I will take it.

17   JUDGE FURGESON:  As I understand it, Judge Houston's
18 ruling is on appeal to the Ninth Circuit?

19   MR. LATTURNER:  That is correct.

20   JUDGE FURGESON:  So that might slow things down just a
21 little bit there but he is the one who clearly has the most
22 familiarity with these cases.

23   MR. LATTURNER:  I think it also might be difficult for
24 this Panel to take the case away from a district where a ruling
25 is on appeal to the circuit.

1          JUDGE FURGESON:  Thank you for your candor.
2          MR. LATTURNER:  Thank you.
3          JUDGE HEYBURN:  Thank you very much.
4          Mr. Madel.
5          MR. MADEL:  That is actually closer than what normally
6  happens.  Thank you.
7          It is not Judge Houston.  It was Judge Battaglia.
8          JUDGE FURGESON:  But Judge Houston now has the cases,
9  right?
10         MR. MADEL:  Correct.  But it was kind of a strange
11 procedural deal that happened.
12         JUDGE BREYER:  Could it go back to Judge Battaglia?
13         MR. MADEL:  I don't think he wants it.
14 (EVERYONE LAUGHS)
15         JUDGE BREYER:  Well he is the new judge.  He is
16 probably running in the other direction from patents.
17         MR. MADEL:  June 23rd we had a preliminary injunction
18 motion before him.  He denied it from the bench and entered an
19 amended order.  We had another case out there, the *Allen* case,
20 that we moved to consolidate with *Meyer* which was before Judge
21 Battaglia so we asked Judge Battaglia to consolidate these
22 cases.  On September 13, Judge Battaglia transferred the case to
23 Judge Houston.  The next day Judge Battaglia reversed himself on
24 the preliminary injunction motion and issued the preliminary
25 injunction.

1            JUDGE FURGESON:  But the case had already gone over to
2    --
3            MR. MADEL:  It had already been transferred, and he
4    also denied the consolidation the day after it was transferred.
5    So we've got a lot of issues on appeal with the Ninth Circuit
6    but we haven't met Judge Houston yet.
7            JUDGE FURGESON:  He is a fine judge.
8            MR. MADEL:  I am sure he is.  I am confident that that
9    is the case.
10           So we originally asked for Judge Battaglia in the
11   Southern District of California.  What we found out in the
12   course of this is that in between the time that he denied the
13   motion from the bench and was writing it, the Plaintiffs'
14   counsel was asking we want a written decision so we can appeal
15   from, the clerk's office informed my colleague Ms. Robins that
16   Judge Battaglia really hates these TCPA cases.  Is tired of you
17   guys calling.  You know, go away.  So it is only third hand but
18   I don't want anybody - if Judge Battaglia gets this case, I
19   don't want to get beat up so what we're asking is that the cases
20   be consolidated in the Southern District of California largely
21   because the Ninth Circuit really is the only circuit right now
22   that has a decision defining the definition of an ATDS, an
23   Automatic Telephone Dialing System, and there is just a recent
24   Supreme Court case, this *Edwards* case, I believe, where they
25   were debating - the question is whether or not these TCPA cases

```
 1   that are below the diversity limit should be in state or federal
 2   court and Justice Kagan - all the justices were peppering
 3   questions and Justice Kagan said, listen, I think all nine of us
 4   agree that this is a very bizarre statute indeed, and it is.
 5   And I don't think anybody can really argue with that, so one of
 6   the things that benefit us in the Southern District of
 7   California is having a little bit of certainty with respect to
 8   that Satterfield decision.  We are up on appeal to the Ninth
 9   Circuit.
10              The question as to the consolidation, I think Mr.
11   Turner represents the two cases that do not want to be part of
12   consolidation.  The main argument there is that he thinks they
13   are different because of skip tracing which is the process that
14   you find a telephone number.  It is just an investigative
15   process.  That definition is included in all of the classes that
16   are against my client right now.  And then he has one other
17   argument that some of the debts are outside the statute of
18   limitations.  That just doesn't matter for a TCPA case.  What
19   matters is the telephone call.  So we would ask that they all be
20   consolidated, and the judge that we would respectfully ask - and
21   I know my time is up - is Chief Judge Irma Gonzalez.  She has a
22   couple TCPA cases.  She just came down with one on Monday where
23   she denied Citibank's motion to dismiss.  So don't think I am
24   cherry picking because I would obviously want to go for somebody
25   who was granting that motion to dismiss but she is very
```

1   experienced.  She has been on the bench since 1992 and was a
2   magistrate judge before that.  She was with the anti-trust
3   division.  She understands complex litigation.  I think that she
4   would be an excellent choice.
5           JUDGE HEYBURN:  Well now she doesn't have a case
6   currently, though, right?
7           MR. MADEL:  She has two TCPA cases pending before her
8   right now but not the **Midland**.  No MDL case.  Is that what
9   you're saying?
10          JUDGE HEYBURN:  So she has two potential tag-a-longs,
11  is that right?
12          MR. MADEL:  No.  She has two TCPA cases with different
13  defendants but she just issued a decision on them.  And one of
14  the things is because the statute is rather unique and you kind
15  of really need to get into some of the legislative history and
16  some of the nuances of it what we really need is somebody really
17  to manage this case and really has pretty good familiarity with
18  the statute and that is why we would prefer Chief Judge
19  Gonzalez.
20          JUDGE HEYBURN:  But Judge Houston could look at that
21  too?
22          MR. MADEL:  Yes.
23          JUDGE HEYBURN:  It is sometimes difficult for us to
24  assign a case to a district and then take away the cases from a
25  judge who is also in that same district.  It looks like we are

1  making a preference for one judge over another within the same
2  district.
3         MR. MADEL:  I understand, Your Honor.  And we have had
4  a very good magistrate judge in the Northern District of
5  Illinois as well as in the Southern District of California who
6  has done a very good job but Magistrate Judge Skomal, to be just
7  candid with the Court, and Ms. Robins can correct me if I am
8  wrong, but he has kind of indicated to us from time to time that
9  Judge Houston isn't exactly thrilled with TCPA cases either, and
10 I understand.  I get it.  But so one of the things that we would
11 just like to do is get a judge that would be actively engaged in
12 managing these.  And if you looked at Chief Judge Gonzalez's
13 decision on this you can see she really did go into the detail
14 of the statute and I really think she does understand these
15 issues.
16         JUDGE HEYBURN:  Okay.  This will establish a new test
17 then.  We will have to give the lie detector, are you thrilled
18 with receiving this case.
19 (EVERYONE LAUGHS)
20         MR. MADEL:  I don't want to be hooked up to that one
21 if that is all right.
22         JUDGE HEYBURN:  Thank you very much.
23         Mr. Turner.  Have you located a judge who will be
24 thrilled to hear these cases?
25         MR. TURNER:  Good morning, Your Honors.  I am Henry

1  Turner.  I am co-counsel in two of the five cases.  I am co-
2  counsel for the named Plaintiff in **Bartlett v. Portfolio**
3  **Recovery Associates**, which is in the Northern District of
4  Georgia Judge Forrester, and also I am co-counsel for **Karen**
5  **Harvey v. PRA**, Portfolio Recovery Associates, which is in the
6  Middle District of Florida.  These are two separate cases, and
7  with all due respect to my colleague, Mr. Madel, the differences
8  here in these two cases and the other three cases are very
9  material.  We generally oppose transfer overall but we
10 specifically respectfully request that if transfer is granted
11 that **Bartlett** and **Harvey** not be part of it.  Now we are joined
12 in that in the briefs from two of the other plaintiffs who
13 specifically say **Allen** and **Meyer** who specifically say in their
14 briefs the differences here make it so that **Bartlett** and **Harvey**
15 shouldn't be transferred.  And you heard my colleague over here
16 say he doesn't oppose exclusion.  Why?  Very simple.  First of
17 all, these cases procedurally, **Bartlett** and **Harvey**, are very
18 advanced.  In **Bartlett** discovery is closed.  It is completed.
19 All briefs for class cert have been filed and submitted to Judge
20 Forrester.  Cross motions for summary judgment have been filed
21 and submitted to Judge Forrester, and court approved mediation
22 is scheduled for February of this next year.  In **Harvey**
23 discovery hasn't formally closed but it is substantially
24 completed.  All the briefs have been filed for class
25 classification and submitted to Judge Scriven, and again, court-

1   approved mediation is scheduled for February in these cases.

2   Even more importantly, Your Honors, the class definitions in

3   **Bartlett** and **Harvey**, which are virtually identical, are very,

4   very different from the class definitions in the other three

5   cases.

6           JUDGE BARBADORO:  Aren't you a subset of class defined

7   in the other cases?

8           MR. TURNER:  No.  No, Your Honor.  There is no subset.

9   It is straightforward, and we included, Your Honor, in our brief

10  a chart that shows the differences.

11          JUDGE BARBADORO:  So your class is not contained

12  within any of the other classes that are in any other cases?

13          MR. TURNER:  Arguably all the other classes are

14  nationwide, Your Honor.  Ours are strictly Georgia in *Bartlett*,

15  Florida in --

16          JUDGE BARBADORO:  I guess my question is does not the

17  nationwide class encompass your statewide class?

18          MR. TURNER:  Yes and no.  And the reason I say that

19  Your Honor is our class is much more defined.  For instance, the

20  class period in our class --

21          JUDGE BREYER:  And are you included within?  The

22  question is, aren't you included within?  Even though yours may

23  be narrower, well defined --

24          MR. TURNER:  There is probably -- I am sorry, Your

25  Honor.

1          JUDGE BREYER:  That is all right.  Go ahead.

2          MR. TURNER:  To use an old mathematical term, there is

3  probably a Venn gram diagram overlap in them.  They are far from

4  being overlaid identically because, again, of the class

5  definitions that we have here.

6          JUDGE FURGESON:  We look at whether there are common

7  fact issues for MDL purposes.  Aren't there common fact issues

8  here that is calls being made under certain circumstances?

9          MR. TURNER:  Your Honor, yes and no.  Again, we have

10 an overlap but it is not a layover on it.

11         May I address that directly?

12         JUDGE FURGESON:  Sure.

13         MR. TURNER:  With an example. And again, this is in

14 the chart that we put on our brief.  Okay?

15         In our case, the class period is very narrow.  It is

16 only approximately a year.  In the other case it is four years.

17 In our case class members can only be those where their cell

18 phone numbers were derived -- I am sorry, Your Honors.  I see my

19 --

20         JUDGE HEYBURN:  You can go ahead.

21         MR. TURNER:  May I continue for a minute?

22         JUDGE HEYBURN:  Go ahead.

23         MR. TURNER:  Where their cell phone numbers were

24 derived through skip tracing, solely through skip tracing.

25 While some of the other cases mention skip tracing, they don't

1  restrict the class to solely skip tracing, and then as Mr. Madel
2  said, we have another element in there for class members the
3  underlying purported debt had to have been in default for more
4  than six years.  None of the other cases have conditions like
5  that.  So those do create, we would respectfully submit,
6  different factual issues.  For instance, has the debt been in
7  default more than six years.  Was the number that was used to be
8  called derived solely through skip tracing?
9             JUDGE RENDELL:  But aren't those questions you can ask
10 in the context of the overall discovery?
11            MR. TURNER:  Which we have asked, Your Honor,
12 because discovery, as I said, in **Bartlett** is closed; we finished
13 that, and we're substantially completed in the Florida case in
14 **Harvey**.
15            And it is our submission - to wrap up - we
16 respectfully submit that the differences are so substantial that
17 to try to bring our two cases in and try to match them up with
18 the other two cases particularly given the tremendous difference
19 in the class definitions which are factually based in many cases
20 would create a problem not only for our two cases.  It would
21 create a problem I think trying to merge that in to any
22 consolidation before a new judge.
23            JUDGE FURGESON:  Could I ask one last question?
24            JUDGE HEYBURN:  Sure.
25            JUDGE FURGESON:  Would that there is an appeal in

1  California, could that help you?

2          MR. TURNER:  Your Honor, as Mr. Madel said, that is -
3  I have been practicing a lot of years - a fascinating situation
4  because you have the appeal.  Not only did Judge Battaglia grant
5  the preliminary injunction, he granted preliminary class
6  certification but the **Meyer** class was originally only
7  California, so the defendant takes it up on appeal to the Ninth
8  Circuit.  All right?  In the mean time, counsel for **Meyer** have
9  filed - and got permission from the defendant - an amended --

10          JUDGE FURGESON:  But I think you are telling me it
11  won't help you.

12          MR. TURNER:  It will not help us, and it is a
13  situation that trying to merge our case or put it in there while
14  there are some things that would fit given all the differences
15  it is going to be very, very difficult.  Does that --

16          JUDGE FURGESON:  Yes, sir.  That is fine.  Thank you
17  so much.

18          JUDGE HEYBURN:  Thank you very much.

19          MR. TURNER:  Thank you, Your Honors.

20          JUDGE HEYBURN:  We will take the matter under
21  submission.

22      **(PROCEEDINGS CONCLUDED)**

1           **CERTIFICATION**

2       I certify that the foregoing is a true and correct

3   transcript of the verbatim record of the proceedings in the

4   above-entitled matter.

5       This the 9th day of December, 2011.

6

7

8

9   /s/ C. Joan Mobley

10  U.S. District Court Reporter

11  Southern District of Georgia

12

13

14

15

16

17

18

19

20

21

22

23

24

25